UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY L. JOHNSON,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Case No.: 3:18-cv-2178-BEN-MSB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. 42] |

  In this civil action, Plaintiff Carey L. Johnson sues the United States of America, the Secretary of the Department of Homeland Security, and sixteen United States Customs and Border Patrol (CBP) Officers[1] for violations of the Rehabilitation Act, the Federal Tort Claims Act, and Johnson's Fourth Amendment rights. Johnson's Fourth Amendment claims arise pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The sixteen Defendant CBP Officers now ask the Court to dismiss Johnson's claims arising under *Bivens* in accordance with Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing failure of subject matter jurisdiction and failure to state a claim upon which relief may be granted. In the alternative, seven of the Defendant Officers argue they are entitled to qualified immunity. Johnson opposes their motion. For the following reasons, Defendants' Motion is **GRANTED**.

---

[1] The sixteen CBP officers are Teresa Andrade, Noel Angeles, James Calapan, Esther Calderon, Raul Cano, Quintin Clarke, John Delgado, Thomas Ferguson, Carlos Fierro, Kevin Guisinger, Hector Ibarra, Chantelle McCulloch, Rolenio Murillo, Alphonso Stephenson, Walter Thomas, and Sean Zeeck.

1

# I. BACKGROUND[2]

Plaintiff Carey L. Johnson is a U.S. citizen and disabled veteran. He resides part-time in Mexico, and frequently crosses the U.S. – Mexico border at designated Ports of Entry to receive treatment at Department of Veterans' Affairs (VA) facilities. Johnson alleges that on September 22, 2016, at the Otay Mesa Port of Entry, Officer Murillo wrote a false report about Johnson which led to other Officers later violating Johnson's Fourth Amendment rights through unlawful searches and seizures. Second Am. Compl., ECF No. 29, at ¶¶ 37-38.

Johnson alleges the very next day, September 23, 2016, Officer Andrade threatened to seize Johnson's car for allegedly violating procedures for using the SENTRI lanes at the Port of Entry. Johnson alleges Officer Andrade made these threats to seize his car even though he allegedly followed a procedure described to him by Officer Murillo the day before. *Id.* at ¶¶ 35-42. After his interaction with Officer Andrade, Officer Ferguson advised Johnson to retrieve his disability letter from the VA and then to return to the gate to receive a disability accommodation for entry into the United States. *Id.* ¶¶ 44-47.

Johnson alleges that when he returned only 45 minutes later, an unnamed supervisor asked him for the disability letter, dismissed it, and thereafter sent ten CBP Officers including Officer Ferguson to arrest Johnson. *Id*. at ¶ 48. Johnson alleges Officer Ferguson and others left him handcuffed to a bench for three hours. *Id*. at ¶ 50. After three hours, Johnson alleges the officers returned and released him, but required him to pay a $5,000.00 fine to retrieve his car, which had been impounded. *Id*. at ¶ 51.

Johnson next alleges that while trying to enter the U.S. on October 31, 2016, Officers Ibarra and Angeles physically abused him by "dragging him from his car, putting Tasers to his chest, wrenching his arms behind his back and piling up on top of him." *Id.* at ¶¶ 59-60.

---

[2] The Court here is not making any findings of fact, but rather summarizing the relevant allegations of the Complaint for purposes of evaluating Defendant's Motion to Dismiss.

On November 1, 2016, Johnson alleges he again tried to receive expedited screening through the SENTRI lanes while entering the U.S because of a medical emergency. *Id.* at ¶ 63. Johnson alleges Officers Clarke, Delgado, Fierro, and McCulloch (1) refused to call him an ambulance while he experienced a medical emergency, (2) threatened to "take" his VA privileges, (3) threatened to call the Department of Child Protective Services to "put his daughter into foster care," and (4) seized Johnson's car without cause. *Id.* at ¶¶ 65, 66-72.

Johnson alleges that on December 1, 2017, "he was thrown to the ground, roughed up, and handcuffed," by Officers Calapan, Cano, Calderon, Guisinger, Stephenson, Thomas, and Zeeck, "before eventually being released and allowed to cross, with no explanation given as to why he had been singled out." *Id.* at ¶ 83. Johnson alleges he suffered bruises, sprains, scarring, and physical and emotional pain as a result of this incident. *Id.* at ¶¶ 83-84.

## II.   PROCEDURAL HISTORY

Johnson filed a Complaint in this Court on September 20, 2018. On November 6, 2019, Johnson filed a Second Amended Complaint. On March 16, 2020, the sixteen Defendant CBP Officers filed this Motion to Dismiss *Bivens* Claims, alternatively arguing seven of the Officers are entitled to qualified immunity. As discussed, the instant Motion to Dismiss addresses only Johnson's first cause of action as set forth in his Second Amended Complaint.

## III.   MOTION TO DISMISS

Defendants move to dismiss Johnson's Second Amended Complaint arguing that (1) the case involves a "new context" for a *Bivens* claim, (2) "special factors" counsel against extending *Bivens* to these facts, and (3) certain defendants would nonetheless be entitled to qualified immunity. Defendants also argue Johnson's claims against Officer Murillo fail to plausibly state a claim upon which relief can be granted. Johnson opposes Defendant Officers' motion. The Court first examines the appropriate legal standard.

///

### A. Legal Standard

On a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's allegations as true and construe all reasonable inferences in favor of the nonmoving party.[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). To avoid dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court assumes the truth of the facts presented in a plaintiff's complaint and construes inferences from them in the light most favorable to the nonmoving party when reviewing a motion to dismiss under Rule 12(b)(6). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B. "New Context," "Special Factors," and Qualified Immunity

Defendants' Motion to Dismiss requires the Court to examine whether Johnson's claims raise a "new context" for a *Bivens* claim. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). If a claim raises a "new context," the Court must consider whether "special factors" counsel hesitation before applying a *Bivens* remedy. *Id*. If the claims do not arise in a new context or if special factors do not counsel hesitation, a *Bivens* claim has been adequately pled and the claim may proceed. With respect to seven of the Defendant Officers, the Court must finally examine whether qualified immunity applies to preclude Johnson's claims.

---

[3] Defendants also move to dismiss the *Bivens* claims for lack of subject matter jurisdiction in accordance with Federal Rule of Civil Procedure 12(b)(1). Defs.' Mot. to Dismiss at 21, n. 9. Defendants do not rely on extrinsic evidence to support their Rule 12(b)(1) motion. Therefore, the jurisdictional attack is facial rather than factual and the Court applies the same standard as it does for a Rule 12(b)(6) motion. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Accordingly, if the Court finds Plaintiff has stated a claim upon which relief can be granted, the Court will also have jurisdiction over the claim.

In *Bivens*, the Supreme Court held that an individual "claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez*, 140 S. Ct. 735, 741 (2020). The Supreme Court later extended *Bivens* to imply a remedy for certain violations of the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228 (1979), and Eighth Amendment in *Carlson v. Green*, 446 U.S. 14 (1980).

Since these three cases were decided, however, the Supreme Court has declined to extend *Bivens* any further. It has declined to create an implied damages remedy for First Amendment violations (*Bush v. Lucas*, 462 U.S. 367 (1983)), race-discrimination in the military (*Chappell v. Wallace*, 462 U.S. 296 (1983)), procedural due process suits against Social Security officials (*Schweiker* v. *Chilicky*, 487 U.S. 412 (1988)), and Eighth Amendment violations against a private prison operator (*Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001)). Most recently, the Supreme Court declined to extend *Bivens* to an action brought against CBP Officers in *Hernandez v. Mesa*, 140 S. Ct. 735.

These cases illustrate the Supreme Court's reluctance to extend *Bivens*, which it views as "a disfavored judicial activity." *Id*. at 742 (quoting *Abbasi*, 137 S. Ct. at 1856 and *Iqbal*, 556 U.S. at 675) (internal quotations omitted). The Court has gone so far as to say that had *Bivens* "been decided today, it is doubtful we would have reached the same conclusion." *Id*. at 743 (quoting *Abbasi*, 137 S. Ct. at 1856) (internal quotations omitted). The result is that this Court must approach any extension of *Bivens* with caution. *Id*. at 742.

Defendants argue all of Johnson's *Bivens* claims arise in a new context and that special factors counsel against extending the *Bivens* remedy. Johnson argues that all his claims arise in an existing *Bivens* context.

A "new context" is one in which the case is "different in a meaningful way from previous *Bivens* cases decided by the [Supreme Court]." (*Abbasi*, 137 S. Ct. at 1859) (emphasis added). In *Abbasi*, the Supreme Court explained:

> "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider."

*Id.* at 1860.

As noted above, the Supreme Court has recognized a *Bivens* remedy in only three contexts. *Id*. at 1855. Where a new context is presented, the Court must "proceed to the next step and ask whether there are factors that counsel hesitation" about granting the extension of a *Bivens* remedy. *Hernandez,* 140 S. Ct. at 744. This "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-1858. Factors counseling hesitation can include separation of powers principles, national security, the availability of other remedies for the alleged wrong, and substantial costs imposed on the government. *Hernandez,* 140 S. Ct. at 747-749; *Abbasi*, 137 S. Ct. at 1858.

If the Court determines special factors are not present, the claim may proceed subject to a finding the officer is entitled to qualified immunity. However, if special factors counsel hesitation – "that is, if we have reason to pause before applying *Bivens* in a new context or to a *new class of defendants* – we reject the request" and the inquiry ends. *Hernandez*, 140 S. Ct. at 743.

Qualified immunity nonetheless "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

### C. "New Context"

Each of Johnson's claims arise from the actions of CBP Officers at Ports of Entry to the United States located within this judicial district. Like *Bivens*, some of Johnson's claims involve allegations that Officers used unreasonable force to subdue Johnson in violation of his Fourth Amendment right to be free from unreasonable seizure. But the inquiry as to whether the case seeks extension of *Bivens* does not end there. *See Malesko*, 534 U.S. at 70 (declining to extend *Bivens* to a new context "[e]ven though the right and the mechanism of the injury were the same as they were in *Carlson*"). The Court must also look to the "statutory or other legal mandate under which the officer was operating, [and] the risk of the disruptive intrusion by the Judiciary into the functioning of the other branches." *Abbasi*, 137 S. Ct. at 1860.

#### i. Different Statutory Mandates

At the national border, CBP Officers are charged with enforcing immigration and customs statutes and regulations. *See e.g.*, 19 U.S.C. § 1467 and 19 C.F.R. § 162.6. The defendants in *Bivens* were not enforcing this same "statutory or other legal mandate." *Abbasi*, 137 S. Ct. at 1860. While the Ninth Circuit allowed a *Bivens* claim against immigration officers in *Chavez v. U.S.*, 683 F.3d 1102, 1110 (9th Cir. 2012), that case involved officers acting entirely within the United States and away from the border. The decision also pre-dates *Abbasi* and *Hernandez* and does not engage in the "new context" and "special factors" analysis required by the Supreme Court. Further, the Ninth Circuit has declined to extend *Bivens* in the immigration context to a wrongful detention allegation while the plaintiffs were pending deportation proceedings. *Mirmehdi v. U.S.*, 689 F.3d 972 (9th Cir. 2012).

Under the construct laid out in *Abbasi* and reaffirmed in *Hernandez*, the different "statutory or other legal mandate" applicable to CBP Officers from the officers involved in *Bivens* is one factor indicating these claims arise in a "new context" for *Bivens*.

This determination finds support in other district court cases that have addressed *Bivens* cases after *Hernandez* was decided on February 25, 2020. *See e.g.*, *Medina v. Danaher*, 2020 WL 1333094, at *5 (D. Colo. Mar. 23, 2020) (refusing to allow *Bivens* claims against Immigration and Customs Enforcement (ICE) Officers because the officers were enforcing immigration rather than criminal law, and the Supreme Court has not previously recognized a *Bivens* claim against ICE Officer defendants).

### ii. Disruptive Intrusion by the Judiciary

Defendants also argue that Johnson's claims extend *Bivens* by creating "a risk of disruptive intrusion by the courts into the domain of the other branches [of government]." Defs.' Mot. to Dismiss at 21. Defendants' specifically point out that Johnson's claims arise at the national border, where "[i]t is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *U.S. v. Flores-Montano*, 541 U.S. 149, 153 (2004). Accordingly, there is no doubt the Executive Branch has "the lead role in foreign policy." *Hernandez*, 140 S. Ct. at 744 (quoting *Medellin v. Texas*, 128 S. Ct. 1346, 1367 (2008)) (internal citations omitted).

The location where Johnson's claims arise certainly presents a new context for his *Bivens* claims when compared to the Supreme Court's precedent. *See id.* at 743 (stating context is new if the case is meaningfully different from "previous *Bivens* cases decided by [the Supreme] Court" and emphasizing "[t]here is a world of difference" between the border and the *Bivens* search that occurred in New York City). This aspect of Johnson's claims is discussed in more detail below, as a special factor counseling hesitation against extending *Bivens*.

Defendants here were enforcing a different statutory or legal mandate than the officers in *Bivens* and the location where the claims arise constitutes a meaningful difference. Accordingly, the Court concludes that Johnson seeks to extend *Bivens* to a new context.

///

///

### D. Special Factors Counseling Hesitation

Having determined these claims arise in a "new context" for *Bivens*, the Court "proceed[s] to the next step and ask[s] whether there are factors that counsel hesitation." *Hernandez*, 140 S. Ct. at 744. Defendants argue the special factors counseling hesitation here include national security, separation of powers, and substantial costs on the government. Plaintiff argues no special factors are present and that the Judiciary is indeed "*best suited*" to address these claims. Pl.'s Reply, ECF No. 47, at 18 (emphasis in original). Defendants' arguments are persuasive.

### i. National Security

"National-security policy is the prerogative of Congress and the President." *Abbasi*, 137 S. Ct. at 1861. "Judicial inquiry into the national-security realm raises 'concerns for the separation of powers in trenching on matters committed to the other branches.'" *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 417 (2002)). Moreover, "[t]he Supreme Court has never implied a *Bivens* remedy in a case involving the military, national security, or intelligence." *Hernandez v. Mesa*, 885 F.3d 811, 818-819 (5th Cir. 2018) (quoting *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012).

Johnson's claims arise from conduct that allegedly occurred on the national border at Ports of Entry, where the "[g]overnment's interest in preventing the entry of unwanted persons and effects is at its zenith." *Flores-Montano*, 541 U.S. at 152. While *Hernandez* may be distinguished as involving a cross-border shooting, the Court balances the national security implications at play in *Bivens*, which occurred inside the plaintiff's Brooklyn, New York apartment and those at play in *Hernandez*. On balance, the national security concerns at play in *Hernandez* are closer to the claims here – enough so to cause the Court "hesitate" before answering it "is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1858.

Accordingly, the Court finds the national security concerns of extending a *Bivens* remedy to conduct occurring on the border is a special factor counseling hesitation.

### ii. Separation of Powers

Defendants' further argue that concerns about separation of powers counsel hesitation before extending a *Bivens* remedy in this case. Defs.' Mot. to Dismiss, ECF No. 42 at 22. Defendants' arguments are based on the same concerns that counsel hesitation in extending *Bivens* due to its national security implications – the claims arise on the national border. "When evaluating whether to extend *Bivens*, the most important question is 'who should decide whether to provide a damages remedy, Congress or the courts?'" *Hernandez*, 140 S. Ct. at 750. As stated above, the national security implications at play at the border necessarily make these claims the type best suited for a congressional, rather than judicially implied remedy. Congress has not acted to extend *Bivens* to this context, and the Court hesitates to do so here.

Accordingly, the Court finds the separation of powers concerns of extending a *Bivens* remedy to conduct occurring on the border is a special factor counseling hesitation.

### iii. Substantial Costs to the Government

In *Abbasi*, the Supreme Court cautioned "the decision to recognize a damages remedy requires an assessment of its impact on government operations systemwide." 137 S. Ct. at 1858. "Every day more than a million people cross American borders." *U.S. v. Cotterman*, 709 F.3d 952, 956 (9th Cir. 2013). This number alone causes the Court to pause before, as Johnson asks, extending a *judicially implied* remedy to each one of the individuals crossing into and out from this nation's borders. Accordingly, the Court finds this factor also counsels hesitation.

### iv. Availability of Other Relief

Finally, Defendants' argue that an alternative remedy through the Federal Tort Claims Act (FTCA) may also be available to Johnson. *See Schwarz v. Meinberg*, 761 F. App'x 732, 734-735, (9th Cir. 2019) and *Wilkie v. Robbins*, 551 U.S. 537, 550 (holding that where alternative processes exist, a court should refrain from providing new remedies). The Court notes that if Johnson is successful in his FTCA claims, he may be barred from pursuing a *Bivens* action based on the same conduct. *See* 28 U.S.C. § 2676;

*Chavez v. U.S.*, 226 F. App'x 732, 736 (9th Cir. 2007). Given the Court concludes these claims present a new *Bivens* context and an alternative remedy may be available, the Court hesitates to extend *Bivens*. *Hernandez*, 140 S. Ct. at 743.

### v. Factors Counseling Hesitation Viewed Together

The "special factors are to be taken together." *Chappell v. Wallace*, 462 U.S. 296, 304 (1983). Thus, the Court may consider the combined weight of these special factors – national security, separation of powers, substantial costs to the government, and the availability of other relief – in determining that hesitation is warranted before extending a *Bivens* remedy to Johnson's claims. The Court is reminded that when extending *Bivens*, the "watchword is caution." *Hernandez*, 140 S. Ct at 742.

Accordingly, the Court finds special factors counsel against extension of a *Bivens* remedy in this case and rejects Johnson's requests to do so.

### E. Qualified Immunity

Having declined to extend a *Bivens* remedy to Johnson's claims against the sixteen Defendant Officers in this case, the Court need not consider whether the officers are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED with prejudice**.

**IT IS SO ORDERED.**

Dated: July 14, 2020

_____
**HON. ROGER T. BENITEZ**
United States District Judge