FILED

JAN 2 5 2021

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY L. JOHNSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　Defendants. | Case No.: 3:18-cv-2178-BEN-MSB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[ECF No. 86] |

This matter comes before the Court on Defendant the United States of America's Motion for Partial Summary Judgment. ECF No. 86. The United States seeks summary judgment on Plaintiff Carey L. Johnson's second and eighth claims for relief, which allege violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* (the "Rehabilitation Act"), and the Bane Act, California Civil Code § 52.1, *et seq.* (the "Bane Act"). The motion is now fully briefed and the Court has considered all the arguments presented, even those not discussed in this Order. To the extent an argument is not acknowledged in this Order, it is rejected. For the following reasons, the Motion is **granted**.

I. **BACKGROUND**

For purposes of this decision, the Court assumes the Parties are familiar with the procedural history and many disputed facts in this case. The Court also notes the United

1

States only seeks summary judgment on two of Johnson's claims and accordingly limits the background to the matters at issue here.

Plaintiff Carey Johnson is a disabled veteran of the United States Marine Corps who suffers from bipolar disorder. Opp'n, ECF No. 85, Ex. 1, Att. A. He lives part-time in Mexico and frequently crosses the international border between Mexico and the United States. *Id.* at Ex. 1, Att. B, pp. 33-34, 127. On some occasions, the long lines at the border crossing have triggered his anxiety and caused significant issues with United States Customs and Border Protection ("CBP") Officers. Mot., ECF No. 80, 2-3. Those occasions are the subject of Johnson's suit.

At the international border, CBP Officers process travelers in automobiles through at least three categories of lanes: general vehicle lanes, Ready Lanes, and Secure Electronic Network for Travelers Rapid Inspection ("SENTRI") Program Lanes. *Id.* The general vehicle lanes are usually slowest and most prone to long waits. *Id.* at 10. Ready Lanes are often faster than the general vehicle lanes and require the traveler to obtain a radio-frequency identification-enabled identity document that can speed CBP's processing and inspection. *Id.* The SENTRI Program Lanes are generally fastest. *Id.* This is because the SENTRI Program Lanes are reserved only for persons who have already (1) applied to the program, which is administered by CBP; (2) undergone a background check that determined them to be low-risk of violating the law; and (3) paid a fee for access to the lanes. *Id.* at 2. SENTRI not only provides a benefit to travelers by reducing wait times at the border but also allows CBP to allocate its limited "attention and resources on higher-risk travelers" while "pre-screening" others through the SENTRI Program long before an individual reaches a port of entry. 85 Fed. Reg. 55597 (Sept. 9, 2020).

Johnson is not part of the SENTRI Program as he not only never applied for it but also likely would not qualify based on his prior criminal convictions. Opp'n, ECF No. 85, 12. Nonetheless, on September 22, 2016, Johnson used the SENTRI Program Lane at the Otay Mesa Point of Entry. *Id.* at 4. Johnson explained to the CBP Officer that he was

2

a disabled veteran, presented his Department of Veterans' Affairs identification, and requested an accommodation due to his disability. *Id.* He specifically requested that he be allowed to use the SENTRI Program Lanes to avoid long waits when he crossed the border, at least at certain times when his bipolar disorder induced severe anxiety. *Id.* at 4-5. From here, the facts become hotly disputed: Johnson argues CBP Officers told him he could continue to use the SENTRI Program Lanes, when needed, to accommodate his disability. *Id.* at 5. The United States, on the other hand, argues CBP Officers informed him that no such accommodation could be made. Mot., ECF No. 80, 4. On at least four subsequent occasions, Johnson attempted to use the SENTRI Program Lanes. *Id.* at 2-3, n. 4. These interactions gave rise to Johnson's Federal Tort Claims Act ("FTCA") claims for assault and battery; false arrest; negligence; conversion; and intentional infliction of emotional distress, none of which are the subject of this Motion for Summary Judgment. Second Amended Complaint ("SAC"), ECF No. 29, 17-21.

In the motion before the Court, the United States only challenges Johnson's claims for relief brought under the Rehabilitation Act and Bane Act. Mot, ECF No. 80, 1. Johnson's Rehabilitation Act claim alleges he is a person with a disability, CBP is a program receiving federal assistance within the meaning of the statute, and he is entitled to use the SENTRI Program Lanes (though not necessarily with all the "security perks" associated with the SENTRI Program) as a reasonable accommodation to his disability. Opp'n, ECF No. 85, 14. The Parties agree Johnson is not entitled to monetary damages for this claim, but that he may be entitled to injunctive and declaratory relief. *See Lane v. Pena*, 518 U.S. 187 (1996); Mot., ECF No. 80, 12-14; Opp'n, ECF No. 85, 9-11.[1]

Johnson's Bane Act claim alleges the United States "interfered with [his] right to

---

[1] The Parties dispute whether Johnson may be entitled to attorney's fees for both his Rehabilitation Act and Bane Act claims. *See* Mot., ECF No. 80, 18-19; Opp'n, ECF No. 85, 11, 18. The Court declines to decide these arguments now, but the Parties may raise these points again following trial.

3

be free from excessive force," which violates the Bane Act. SAC, ECF No. 29, 21-22.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence, viewed in light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

If, "after adequate time for discovery," a moving party shows that the party which will bear the burden of proof at trial cannot "make a showing sufficient to establish the existence of an element essential to that party's case," then, "the plain language of Rule 56(c) mandates the entry of summary judgment." *Celotex*, 477 U.S. at 322; *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thus, the party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If a moving party carries its burden of proving an absence of evidence as to an essential element of the opposing party's case, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Oracle*, 627 F.3d at 387; *see also Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009). In ruling on a motion for summary judgment, the substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court also draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. ANALYSIS

### A. *Rehabilitation Act Claim*

Johnson alleges the United States, through CBP, discriminated against him "by denying him a reasonable accommodation for his disability and failing to provide him services and support in a more integrated setting" as he crossed the border from Mexico into the United States. SAC, ECF No. 29, 18. Johnson specifically argues he is entitled to use the SENTRI Program Lanes at ports of entry as a reasonable accommodation for his disability. Opp'n, ECF No. 85, 11-15. The United States argues Johnson cannot maintain a Rehabilitation Act claim because (1) he is not otherwise qualified to use the SENTRI Program Lane and (2) his requested modification "is neither necessary nor reasonable" because it would fundamentally alter the SENTRI Program. Mot., ECF No. 80, 12-16.

To establish a program or service violates Section 504 of the Rehabilitation Act, "a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (quoting 29 U.S.C. § 794); *see also Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (reciting the same factors).

The Parties do not dispute that Johnson is disabled or that CBP is a program that receives federal assistance within the meaning of 29 U.S.C. § 794; however, they disagree about the application of the second and third factors listed above. The United States asserts Johnson demands access to the SENTRI Program and its benefits, while Johnson argues he merely should be allowed to use the SENTRI Program *Lanes* as a reasonable accommodation to his disability without "any other security perks of SENTRI membership." *Compare* Mot., ECF No. 80, 15 *with* Opp'n, ECF No. 85, 13-14. Both Johnson's claim and briefing make clear that the United States misinterprets his request. *See* SAC, ECF No. 29, 18-19; Opp'n, ECF No. 85, 12-13. Johnson argues that he is

5

otherwise qualified to receive the benefit of "crossing the border," and that he is substantially denied that benefit because CBP refuses to reasonably accommodate his disability. Opp'n, ECF No. 85, 12.

"A failure to provide a reasonable accommodation can constitute discrimination under section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 388 F.3d 1145, 1154 (9th Cir. 2002). "The question of whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards.'" *Id.* (quoting *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999)). Johnson, as Plaintiff, bears the "initial burden of producing evidence that a reasonable accommodation was possible." *Id.* (quoting *Wong*, 192 F.3d at 816-17). Once produced, the burden shifts to the United States "to produce rebuttal evidence that the requested accommodation was not reasonable." *Id.* An accommodation is not reasonable where it would "alter the fundamental nature" of the program or policy. *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004).[2]

Johnson argues CBP can reasonably accommodate him in the SENTRI Program Lanes because it has done so before, and "there is nothing physically unique about the SENTRI lane," such that Johnson—due to his disability—"would simply have to show documentation that he, too, [as a disabled person unable to wait in the general traffic lanes] is entitled to use the lane." Opp'n, ECF No. 85, 12-13. In response, the United States argues that allowing Johnson to use the SENTRI Program Lane as a reasonable

---

[2] *Fortyune* involved an ADA claim. However, Title II of the ADA was modeled after Section 504 of the Rehabilitation Act, so "[t]here is no significant difference [between the two] in analysis of the rights and obligations created." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999). Accordingly, case law interpreting each statute is applicable to both. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

6

accommodation would fundamentally alter the SENTRI Program by swamping the SENTRI Program Lanes with similarly situated disabled travelers and diverting additional CBP resources to inspection at SENTRI Program Lanes. Reply, ECF No. 88, 8. Thus, even if Johnson is not asking for SENTRI enrollment or any of the "other security perks of SENTRI membership," the program is still fundamentally altered. Opp'n, ECF No. 85, 12.

Though outside the context of a border crossing, courts within this circuit have previously addressed similar claims that front-of-the-line access for disabled persons, when aggregated, can fundamentally alter a policy, program, or business. For example, in *Galvan v. Walt Disney Parks and Resorts, U.S., Inc.*, the court granted summary judgment to Disney on the plaintiff's claim for disability discrimination. 425 F. Supp. 3d 1234, 1241-42 (C.D. Cal. 2019). The plaintiff, who suffered from anxiety disorder, alleged long lines for theme park rides triggered his condition. *Id.* He sued Disney for refusing to grant him a disability access card that would allow him to circumvent ride lines at the park. *Id.* In ruling for Disney, the court found the requested accommodation would fundamentally alter the theme park experience because granting the accommodation to one could require Disney to grant the accommodation to all others similarly situated, vastly delaying the general ride queues. *Id.*

Here, the United States has made a similar showing: the SENTRI Program allows CBP to focus its efforts on higher-risk travelers. Allowing disabled individuals to use the SENTRI Program Lanes who have not been subject to a background check and other requirements of SENTRI enrollment fundamentally alters the program. Johnson's argument that "[t]here is nothing physically unique about the SENTRI lane" misses the point that the SENTRI lane is just one part of a broader program designed to focus CBP's limited "attention and resources on higher-risk travelers." 85 Fed. Reg. 55597 (Sept. 9, 2020). He also fails "to designate specific facts demonstrating the existence of genuine issues for trial," *Oracle*, 627 F.3d at 387, instead only speculating Johnson's use of the SENTRI Program Lanes would not impact CBP's operations. Opp'n, ECF No. 85, 13.

    Moreover, there is nothing about Johnson's disability that prevents him from enrolling in the SENTRI Program, which would enable him to use the SENTRI Program Lane. Indeed, the Parties seem to agree that Johnson would likely be unable to pass the SENTRI Program's background check due to his prior criminal conviction, not because of his disability. *See* Mot., ECF No. 80, 14-15; Opp'n, ECF No. 85, 12. Thus, even Johnson's argument that "he was denied the benefits of the program solely by reason of his disability" is doubtful at best. *Weinreich*, 114 F.3d at 978.

    For these reasons, Johnson cannot "make a showing sufficient to establish the existence of an element essential to [his] case"—namely that his requested relief would not fundamentally alter the existing SENTRI Program, and that he was denied a benefit because of his disability. *Celotex*, 477 U.S. at 322. Accordingly, the Court grants the United States summary judgment on Johnson's Rehabilitation Act claim.

### B. *Bane Act Claim*

    The United States next challenges Johnson's Bane Act claim for relief "to the extent [it] is premised on violations of the United States and California Constitutions." Mot., ECF No. 80, 20.

    The Bane Act "provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion with the exercise or enjoyment of the constitutional or statutory rights of any individual, the individual may sue for damages independent of any other action that is available." *Reynoso v. Prater*, Case No. 13-cv-0718-AJB-RBB, 2013 WL 5937223, at *4 (S.D. Cal. Nov. 4, 2013) (citing *Xue Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010)). Johnson's Bane Act claim is levied against the United States using the FTCA and alleges federal employees (here, CBP Officers) "interfered with [Johnson's] right to be free from excessive force." SAC, ECF No. 29, 21-22. At first glance, this appears to state a proper Bane Act claim.

    However, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Reynoso*, 2013 WL 5937223, at *4 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). While the FTCA waived sovereign immunity claims for

certain torts committed by federal employees, constitutional tort claims are not cognizable under the FTCA. *Meyer*, 510 U.S. at 475. The United States argues Johnson's Bane Act claim is based on a constitutional violation—the use of excessive force. Mot., ECF No. 80, 20. Accordingly, the United States reasons, the claim is barred by the Supreme Court's decision in *Meyer* that the FTCA did not waive sovereign immunity for constitutional claims. *Id.*

In response, Johnson argues his claims are based on Article I, Section 7 of the California Constitution (the right to due process and equal protection of the law), and California Civil Code Section 54(a). But that is not what he pleaded in his SAC. Instead, Johnson's only Bane Act claim is for excessive force, premised upon violation of the federal constitution. The Supreme Court's decision in *Meyer* forecloses this theory, and accordingly the United States is granted summary judgment on this claim. 510 U.S. at 475; *see also Reynoso*, 2013 WL 5937223, at *3-4 (dismissing Bane Act claims premised on federal and state constitutional violations, but not a separate Bane Act claim based on a state statutory violation).

### C. *Motion for Leave to File DVD and Motions to Seal (ECF Nos. 81, 82, 86)*

Concurrent with the Parties' briefing on the United States' Motion for Partial Summary Judgment, the United States submitted a Motion to Lodge/File a Physical DVD of Videos in Support of its Motion for Summary Judgment. ECF No. 81. The DVD contains videos of some of Johnson's interactions with CBP Officers at ports of entry that could not be converted to electronic form. Johnson did not file an opposition to the United States' Motion. Good cause appearing, the Motion is **granted**.

Both Parties also submitted Motions to File Documents Under Seal. ECF Nos. 82, 86. Except for certain documents "traditionally kept secret," federal courts begin a sealing analysis with "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to seal a judicial record then must "articulate [] compelling reasons supported by specific factual findings," *id.*, that outweigh the general history of access and the public policies

favoring disclosure, such as the "public interest in understanding the judicial process," *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir. 1995). The Court "conscientiously balance[s] . . . the competing interests" of the public and the party who seeks to keep certain judicial records secret. *Foltz,* 331 F.3d at 1135. After considering these interests, if the Court decides to seal certain judicial records, it "base[s] its decision on a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad,* 49 F.3d at 1434 (citing *Valley Broadcasting Co. v. U.S. Dist. Ct.,* 798 F.2d 1289, 1295 (9th Cir.1986)).

Both Parties express a need to disclose Johnson's medical records to the Court as evidence supporting their briefing on the United States' Motion for Partial Summary Judgment. They bring this Motion to file those records under seal out of concern for Johnson's privacy. The Court is mindful that protection of medical privacy has often been found to be a "compelling reason" for sealing records. *See Domingo v. Brennan,* 690 Fed. App'x 928, 930-31 (9th Cir. 2017) *and Heldt v. Guardian Life Ins. Co. of Am.,* Case No. 16-cv-885-BAS-NLS, 2018 WL 5920029, at *2 (Nov. 13, 2018) (citing others). On balance, the potential harm to Johnson's privacy outweighs the public interest here. Accordingly, the Court exercises its discretion to **grant** the motions. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599 (1978). The Clerk is directed to file the unredacted version of the documents lodged at ECF Numbers 83 and 87 under seal.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is **GRANTED**. ECF No. 80. Defendant's Motion for Leave to File a DVD is **GRANTED**. ECF No. 81. The Parties' Motions to File Documents Under Seal are **GRANTED**. ECF Nos. 82, 86.

**IT IS SO ORDERED.**

Dated: January 26, 2021

HON. ROGER T. BENITEZ
United States District Judge

10

3:18-cv-2178-BEN-MSB